IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re Application of the United | § | Magistrate No. H-10-998M |
| States of America for Historical | § | Magistrate No. H-10-990M |
| Cell Site Data | § | Magistrate No. H-10-981M |

Government's Reply to Amicus Briefs of EFF, ACLU,
ACLU of Texas, and Susan Freiwald

The United States respectfully submits this brief in response to the January 14, 2011 brief of the Electronic Frontier Foundation, American Civil Liberties Union, and ACLU of Texas ("EFF Brief") and the January 14, 2011 brief of Susan Friewald ("Friewald Brief"). These briefs argue that the United States should not be allowed to compel disclosure of historical cell-site records from a cell phone company using a court order issued under 18 U.S.C. § 2703(d) (a "2703(d) order"), and they argue that the Opinion entered on October 29, 2010, by Magistrate Judge Smith in matters Magistrate No. H-10-998M, H-10-990M, and H-10-981M (the "Opinion") should be affirmed.   For the reasons set forth below, this Court should reject the arguments of amici, conclude that a 2703(d) order may be used to compel disclosure of historical cell-site records, and reverse Magistrate Judge Smith's Opinion.

**I.  This court should reject Magistrate Judge Smith's "findings of fact."**

Without giving the United States prior notice of the specific facts of which he intended to take judicial notice, Magistrate Judge Smith relied on judicial notice to make extensive factual findings regarding the structure of phone companies' networks and the location information generated and stored by providers.  *See* Opinion at 5-15.  Magistrate Judge Smith stated in the

Opinion that its factual findings were "judicially noticed facts" that were "appropriate for judicial notice under Rule 201 of the Federal Rules of Evidence."  Opinion at 4-5.   In its December 3, 2010 brief ("United States Brief"), the United States objected to Magistrate Judge Smith's "findings of fact" because Magistrate Judge Smith failed to provide the United States with appropriate notice of the findings, because these findings are not properly subject to judicial notice, and because the findings are inaccurate or misleading.  *See* United States Brief at 6-12. This Court should reject Magistrate Judge Smith's "findings of fact" because they are "subject to reasonable dispute" under Rule 201 of the Federal Rules of Evidence.

> A.   <u>Amici do not dispute that Magistrate Judge Smith's findings of fact are not subject to judicial notice.</u>

Significantly, amici make no attempt to argue that Magistrate Judge Smith's findings of fact are properly subject to judicial notice.  Such an argument is foreclosed by the Fifth Circuit's rule that "judicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities."  *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347 (5th Cir. 1982).  A judicially noticed fact must be "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Federal Rule of Evidence 201(b).  Because the structure of cell phone provider networks and providers internal record-keeping practices are subject to reasonable dispute rather than "truisms that approach platitudes or banalities," Magistrate Judge Smith's findings of fact are not properly subject to judicial notice, and this Court should reject them.

2

B.     Except as authorized by the judicial notice doctrine, a court lacks authority to
make factual findings beyond the scope of the record before the court.

Instead of arguing that Magistrate Judge Smith's findings of fact were appropriate for

judicial notice, amici argue that Magistrate Judge Smith's authority to find facts outside the

record before the court was not constrained by the limitations of judicial notice.  *See* ACLU Brief

at 6 (asserting that Magistrate Judge Smith's "reliance on Federal Rule of Evidence 201 was

unnecessary"); Friewald Brief at 20 (asserting that a judge "should be able to consider any

evidence he considers relevant").  Magistrate Judge Smith did not claim this authority – he cited

only judicial notice as the basis for his findings of fact.  Moreover, as the Advisory Committee

Notes to Rule 201 of the Federal Rules of Evidence explain, "[t]he usual method of establishing

adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony

of witnesses."  Under amici's theory, a court may apparently declare as fact anything beyond the

scope of the record before the court, perhaps limited only by the court's ability to cite some

source in support of its purported factual finding.  Amici cite no case authorizing a court to make

this sort of fact finding unconstrained by the record before the court.

A court acting on an application for a 2703(d) order may not make factual findings not

supported in the record before the court.  In this respect, an application for a 2703(d) order is

analogous to a suppression hearing:  in a suppression hearing, the hearsay rule does not apply,

but a court's factual findings must be supported by evidence in the record before the court.  *Cf.*

*United States v. Howard*, 106 F.3d 70, 73 (5th Cir. 1997) (appellate court reviews district court's

findings of fact in suppression hearing for clear error, and finding of fact is clearly erroneous

"when although there is evidence to support it, the reviewing court on the entire evidence is left

with a firm and definite conviction that a mistake has been committed").   For example, in *United States v. Mariscal*, 285 F.3d 1127, 1131-32 (9th Cir. 2002), the district court's denial of a suppression motion was based on the district court's factual determination that a particular road "is a heavily traveled east-west street in the City of Phoenix."  *Id.* at 1131.  The Ninth Circuit rejected this finding of fact because it was not supported in the record before the court and because it was not suitable for judicial notice under Rule 201.  *See id.* at 1131-32.  *Mariscal* illustrates that the doctrine of judicial notice sets the appropriate limit on a court's authority to find facts beyond the scope of the record, even in a proceeding excluded from the Federal Rules of Evidence by Rule 1101(d)(3).

     C.    <u>Magistrate Judge Smith's findings of fact are not entitled to deference from this court.</u>

EFF suggests that this Court should ask whether Magistrate Judge Smith's findings of fact were clearly erroneous, *see* EFF Brief at 8, but this Court should review Magistrate Judge Smith's findings of fact de novo.  A 2703(d) order may be issued "by any court that is a court of competent jurisdiction," and a "court of competent jurisdiction" is defined to include "any district court of the United States."  18 U.S.C. §§ 2703(d), 2711(3).  Thus, this Court may consider the United States' applications and issue the 2703(d) order requested by the United States.  *See, e.g.*, *In re Application of the United States*, 433 F. Supp. 2d 804 (S.D. Tex. 2006) (Rosenthal, J) (granting United States' application for prospective order for cell-site information under the pen/trap statute and 18 U.S.C. § 2703(d)).  Moreover, this Court's authority to issue 2703(d) orders demonstrates that this Court need not, as EFF suggests, remand to Magistrate Judge Smith for further findings of fact.  Because this Court has jurisdiction to issue 2703(d)

orders, it is appropriate for this Court to receive further testimony if it believes that further testimony will be helpful in deciding this case.[1]

Furthermore, clear error review is inappropriate in this case because Magistrate Judge Smith's Opinion is not based on any testimony; it is based solely on the documents filed by the United States and Magistrate Judge Smith's extra-record research. Deference to another court's findings of fact is appropriate when the court has heard testimony, observed witnesses, and evaluated credibility. For example, clear error review is appropriate for appellate review of a suppression decision "because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). In this case, there is no reasoned basis to defer to Magistrate Judge Smith's findings of fact.

In any case, Magistrate Judge Smith's findings of fact are clearly erroneous. A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Howard*, 106 F.3d at 73. Here, Magistrate Judge Smith's findings of fact are not supported by the record at all. They are not in the record before the court,[2] and they are not properly subject to judicial notice. Thus, the findings of fact are clearly erroneous. This conclusion is further

---

[1]As the United States previously argued, no further testimony is necessary for this Court to conclude that a provider may be compelled to disclose historical cell-site records. However, if this Court wishes to make findings of fact regarding the accuracy of T-Mobile's historical cell-site records, it may be helpful to receive testimony from T-Mobile on that topic. *See* United States Brief at 5-6.

[2]Although the Opinion describes the various non-record sources relied upon by the court as the "record appendix," Opinion at 4, these sources cannot be considered part of the record in this case. Other than the United States' applications, which are of course part of the record in this case, the documents in the "record appendix" were not entered in the docket or even cited by the court prior to the issuance of its Opinion.

bolstered by the conflict between the findings of fact and the MetroPCS affidavit, *see* United States Brief at 10-12, and by the conflict between the findings and the sample T-Mobile cell-site records filed with the United States' October 25, 2010 brief before Magistrate Judge Smith, which show that T-Mobile produces only cell tower and sector information at the beginning and end of each phone call.  For these reasons, Magistrate Judge Smith's findings of fact are clearly erroneous.

D. <u>Magistrate Judge Smith failed to provide the United States with appropriate prior notice of the findings of fact.</u>

Prior to issuing the Opinion, Magistrate Judge Smith did not inform the United States of the specific facts of which he intended to take judicial notice.  Instead, the court only informed the United States of the broad categories from which he intended to draw facts.  *See* October 14 Order at 1-2.  The EFF Brief does not defend this deficiency, but the Friewald Brief asserts that this limited notice was "sufficient to permit the government to consult those same sources and respond to them."  Friewald Brief at 21.  This claim, however, cannot withstand scrutiny.

In the October 14 Order, Magistrate Judge Smith failed to cite any specific facts of which he intended to take judicial notice, and he failed to cite any specific sources or documents he intended to rely upon.  In particular, the Order stated only that the court intended "to take judicial notice of certain facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including the following:  (1) congressional testimony at recent hearings before House and Senate committees on ECPA reform; (2) published surveys and studies by telecommunications industry groups such as CTIA regarding cell sites and cell phone usage; (3) published reports and product specifications concerning current microcell

technology; and (4) published privacy policies of providers regarding call location information."
The United States could not possibly go through every document which fell within these broad
categories and identify every fact which is or is not subject to judicial notice.  Magistrate Judge
Smith therefore failed to provide the United States with appropriate prior notice of his findings of
fact.

Finally, if amici were correct that Magistrate Judge Smith had authority to make factual
findings that were neither supported by evidence before the court nor subject to judicial notice,
Magistrate Judge Smith gave the United States no notice that he intended to make such factual
findings.  By its terms, Magistrate Judge Smith's October 14 Order states only that the court
intended "to take judicial notice of certain facts capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned."  The October 14 Order
provided no indication that the court intended to adopt facts beyond the record that were not
properly subject to judicial notice.  Thus, Magistrate Judge Smith failed to provide the United
States with prior notice of his findings of fact.

E.    Magistrate Judge Smith's findings of fact are inaccurate or misleading.

The United States' initial brief explained that Magistrate Judge Smith's findings of fact
are vague, misleading, and incorrect.  *See* United States Brief at 10-12.  The findings of fact
make various claims that are in direct conflict with the MetroPCS affidavit, as well as statements
from T-Mobile regarding their historical cell-site information.  Amici make no attempt to defend
any particular finding of fact disputed by the United States.  EFF cites the academic credentials
of Matt Blaze, the computer science professor on whom Magistrate Judge Smith heavily relied
for his findings of fact.  *See* EFF Brief at 8-9.  But being a researcher into surveillance

7

technology is not sufficient to demonstrate knowledge about the practices of cell phone service providers regarding historical cell-site information.   The service providers themselves are the only direct source of such information, and the information provided by MetroPCS and T-Mobile conflict with Magistrate Judge Smith's findings of fact.[3]

## II.  The Fourth Amendment permits compelled disclosure of historical cell-site information.

Historical cell-site records are business records generated and stored by cell phone companies at their discretion when customers make or receive telephone calls.  As discussed below, amici set forth several arguments in an attempt to argue that compelled disclosure of these business records without a warrant violates the Fourth Amendment.  They argue that the government cannot compel disclosure of historical cell-site records because such records have not been voluntarily conveyed to the provider, but there is no "voluntariness" requirement for compelled disclosure of business records, and in any case cell-site information is voluntarily disclosed to providers.  They argue that the government cannot compel disclosure of historical cell-site records because such records are intrusive and invasive, but historical cell-site records reveal only limited information about the general location of a phone when a call is made, and the compelled disclosure of business records has never been limited to information of limited use to law enforcement.  They argue that the government cannot compel disclosure of historical cell-site records because the subscriber receives no prior notice of the legal process, but the target of

---

[3]Amici also suggest that Magistrate Judge Smith was justified in his extra-record fact finding because the United States did not offer sufficient evidence in support of its application. *See* EFF Brief at 9; Freiwald Brief at 20.  As an initial matter, the United States's applications were not deficient:  they met the standards for a 2703(d) order.  But even if they were deficient, that deficiency would only justify denying the applications; it would not allow the court to engage in extra-record fact finding unconstrained by the doctrine of judicial notice.

an investigation is not entitled to notice of a subpoena directed to a third party.  They argue that the government cannot compel disclosure of historical cell-site records under the legal standards applicable to tracking devices, but these standards are not applicable to the compelled disclosure of business records, and even if they were, a warrant would not be required for compelled disclosure of historical cell-site information.  In addition, amici set forth an alternative interpretation for 18 U.S.C. § 2703(d) that would give a court discretion to deny a 2703(d) order that both complied with the Fourth Amendment and met the statutory standard for 2703(d) orders, but this interpretation should be rejected as inconsistent with the statutory language, structure, and legislative history.  For these reasons, this Court should reverse the Opinion and grant the United States's applications for historical cell-site records.

> A.  A 2703(d) order may be used to compel disclosure of historical cell-site records regardless of whether they are "voluntarily" disclosed to the service provider.

In its initial brief, the United States explained that a customer has no privacy interest in a third party's business records.  *See* United States Brief at 13-21.  In response, amici argue that under *United States v. Miller*, 425 U.S. 435 (1976), the United States may only use a subpoena to compel disclosure of records that were "knowingly exposed and voluntarily conveyed to the business."  EFF Brief at 15.  As explained on pages 17-18 of the United States Brief and addressed in subsection B below, cell-site information is in fact voluntarily conveyed to the cell phone service provider.  Nevertheless, amici's argument that voluntariness is a necessary requirement to the Fourth Amendment inquiry into compelled disclosure of historical cell-site records is mistaken; it is based on a misunderstanding of the issue before the Court in *Miller*.

*Miller* demonstrates that a voluntariness inquiry is not part of the ordinary analysis into whether the Fourth Amendment is implicated by a 2703(d) order for historical cell-site records. In *Miller*, the Supreme Court held that the a customer's bank records "are not respondent's 'private papers'" but are "the business records of the banks" in which a customer "can assert neither ownership nor possession." *Miller*, 425 U.S. at 440. This ruling applies equally to the records at issue before this Court. The defendant in *Miller*, however, also argued that there was a special factor present in *Miller* that changed the usual Fourth Amendment analysis applicable to subpoenas for business records: the Bank Secrets Act, a mandatory records-retention law, under which Congress mandated that banks preserve customer account records. *See id.* at 441. The defendant in *Miller* argued that "the combination of the recordkeeping requirements of the Act and the issuance of a subpoena to obtain those records permits the Government to circumvent the requirements of the Fourth Amendment." *Id.* In response to this argument, the Supreme Court stated that "we must address the question whether the compulsion embodied in the Bank Secrecy Act as exercised in this case creates a Fourth Amendment interest in the depositor *where none existed before*." *Id.* (emphasis added). The Court concluded that it did not, in part because the documents obtained from the bank "contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id.* at 442. Thus, in *Miller*, the Supreme Court addressed voluntariness only because Congress had imposed a mandatory data retention law on the bank. At most, such an inquiry is called for only when the government has imposed upon the business a mandatory records retention requirement or a requirement to act as a government agent in collecting and disclosing information prospectively, as in *Smith v. Maryland*, 442 U.S. 735 (1979). The Court in *Miller* concluded that "even if the banks could be

10

said to have been acting solely as Government agents in transcribing the necessary information
and complying without protest with the requirements of the subpoenas, there would be no
intrusion upon the defendants' Fourth Amendment rights."  *Miller*, 425 U.S. at 443.[4]

     Where a business makes records at its own discretion and not at the direction of the
government, the compelled disclosure of the records does not violate the Fourth Amendment
without regard to whether the customer "voluntarily" disclosed the information to the business.
For example, the Supreme Court did not address voluntariness in *SEC v. Jerry T. O'Brien, Inc.*,
467 U.S. 735 (1984), in which the Supreme Court held that the target of an investigation had no
right to notice of subpoenas issued to third parties.  Without addressing voluntariness, the Court
stated that "when a person communicates information to a third party even on the understanding
that the communication is confidential, he cannot object if the third party conveys that
information or records thereof to law enforcement authorities."  *Id.* at 743.  Furthermore, the
Court in *Jerry T. O'Brien* specifically noted the lack of a mandatory record retention
requirement: it explained that "any Fourth Amendment claims that might be asserted by
respondents are substantially weaker than those of bank customers in *Miller* because respondents,
unlike the customer, cannot argue that the subpoena recipients were required to keep the records
in question."  *Id.* at 743 n.11.  *See also Donaldson v. United States*, 400 U.S. 517, 522-23
(holding that taxpayer was not entitled to intervene in proceeding to enforce summons for his

---

[4]Of course, nothing in *Miller* or any other Supreme Court case suggests that a warrant is
required to compel disclosure of information maintained pursuant to a mandatory data retention
requirement when the information is not voluntarily disclosed.   The issue in *Miller* was whether
the defendant had a sufficient Fourth Amendment interest to challenge the use of bank records
obtained pursuant to a *defective* subpoena, not whether a warrant rather than a subpoena would
be required to obtain bank records.  *See Miller*, 425 U.S. at 438-39.

employment records and stating "what is sought here by the Internal Revenue Service . . . is the production of Acme's records and not the records of the taxpayer").

Critically, unlike the financial information at issue in *Miller*, no law requires a cell phone service provider to maintain historical cell-site records.[5]  They are the provider's business records, kept at the provider's discretion.  *See United States v. Gallo*, 123 F.2d 229, 231 (2d Cir. 1941) (L. Hand, Swan, A. Hand, JJ.) ("When a person takes up a telephone he knows that the company will make, or may make, some kind of a record of the event, and he must be deemed to consent to whatever record the business convenience of the company requires.").   Thus, voluntariness plays no role in whether the government may compel a phone company to disclose the historical cell-site records that it chooses to store.  Historical cell-site records remain subject to the traditional rule that "a person has no Fourth Amendment basis for challenging subpoenas directed at the business records of a third party."  *Reporters Committee for Freedom of Press v. AT&T*, 593 F.2d 1030, 1044 (D.C. Cir. 1978) (citing cases).

Finally, amici's purported voluntariness requirement for compulsory process is inconsistent with "the longstanding principle that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege."  *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972).  When law enforcement questions a witness about the target of an investigation, the scope of the questioning is not limited to information the target has voluntarily disclosed to the witness.  Similarly, the information that a witness can be compelled to disclose about a target of an investigation is not limited to

_____

[5]Pursuant to 47 CFR § 42.6, providers are required to maintain for 18 months "the name, address, and telephone number of the caller, telephone number called, date, time and length of the call."  This requirement does not extend to cell-site information.

information that the target has voluntarily disclosed to the witness.  This principle extends to the business record context:  the United States may compel a business to disclose the contents of its own business records when those records contain information relevant to a criminal investigation.

      B.    <u>Historical cell-site records have been voluntarily conveyed to the service provider.</u>

In its initial brief, the United States explained that cell-site information is voluntarily conveyed to the cell phone service provider.  *See* United States Brief at 17-18.  EFF asserts that this claim is made "without any factual record to rely on," EFF Brief at 16, but this assertion is mistaken.  Service providers' terms of service and privacy policies may properly be considered part of the record before the court because, as the United States stated in its October 25 brief before Magistrate Judge Smith, they are properly subject to judicial notice under Rule 201.  As the United States' Brief demonstrated, T-Mobile's privacy policy informs its customers that T-Mobile obtains information regarding cell phone location and stores the information as a business record.  *See* United States Brief at 18.  MetroPCS similarly informs its customers that it collects and stores location information regarding their phones.[6]

_____

[6]MetroPCS's privacy policy states:

> As an integral part of enabling wireless communications, information regarding the general location of your phone or wireless device is collected and used by the MetroPCS network. Your wireless device sends out periodic signals to the nearest radio tower/cell site providing information, including information regarding the location within the network, which allows the network to properly route an incoming call or message, and to provide the services that you may have subscribed to. This network location information derived from providing our Service, in addition to being covered by this Policy, is CPNI and is protected as described above.

*See* www.metropcs.com/privacy/privacy.aspx (last visited February 2, 2011).

Moreover, the Supreme Court's analysis of the information voluntarily conveyed by a customer to a business is based not on consumer surveys or testimony, but instead on the assumption that customers are familiar with how the business functions. *See Smith v. Maryland*, 442 U.S. 735, 742 (1979) (" All telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed."). Magistrate Judge Smith's assumption of cell phone user ignorance – that "a cell phone user may well have no reason to suspect that her location was exposed to anyone," Opinion at 31 – is inconsistent with this approach. *See* United States Brief at 17. In fact, cell phone users will know from their experience with cell phones (including being too far from a cell tower to complete a call, dropped calls, and an icon on their phone indicating signal strength) that they communicate with a provider's cell tower. As the district court explained in *United States v. Suarez-Blanca*, 2008 WL 4200156, at *8 (N.D. Ga. Mar. 26, 2008), "a cell phone user voluntarily dials a number and as a result voluntarily uses the cell phone provider's towers to complete the number. The cell phone provider retains records of which towers were used in dialing a call. By voluntarily using the equipment, the cell phone user runs the risk that the records concerning the cell phone call will be disclosed to police."

C.     <u>Acquisition of cell-site records is permissible under the third-party rule and is neither invasive nor intrusive.</u>

Amici argue that a warrant should be required for compelled disclosure of historical cell-site information because it is invasive and intrusive. *See* EFF Brief at 16; Freiwald Brief at 8. This argument is doubly mistaken. First, as discussed in the United States's initial brief, historical cell-site information can disclose only past information about the general location of a

14

cell phone when a call is made; it cannot reveal whether a cell phone is within a private space, such as a home. *See* United States Brief at 27. Historical cell-site information provides less information to law enforcement than a traditional pen register, which can enable law enforcement on an ongoing basis to conclude that a person is located in a particular private space at a particular time. Nevertheless, the Supreme Court held that in *Smith v. Maryland* that use of a pen register was not a Fourth Amendment search. *Smith*, 442 U.S. at 745. Similarly, obtaining historical cell-site records is not a Fourth Amendment search.

Second, the Supreme Court has never limited the third-party principle – that information revealed to a third party may subsequently be revealed to the government – to information that is unrevealing or of limited use to law enforcement. Indeed, *United States v. Miller* cites three cases for the proposition that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities," and all three of these cases involve the content of communications, rather than non-content information or business records. *See Miller*, 425 U.S. at 443 (citing *United States v. White*, 401 U.S. 745 (1971) (content of conversation with informant), *Hoffa v. United States*, 385 U.S. 293 (1966) (same), and *Lopez v. United States*, 373 U.S. 427 (1963) (content of conversation with government agent)). Thus, because historical cell-site records are the provider's business records, and are substantially less intrusive than the content of communications, the United States may compel the provider to disclose them using a 2703(d) order.

Amici cite *United States v. Warshak*, ___ F.3d ___, 2010 WL 5071766 (6th Cir. Dec. 14, 2010), in support of their argument that the United States should be required to obtain a warrant for historical cell-site records, but *Warshak* does not limit the compelled disclosure of cell-site

records.  *See* EFF Brief at 17; Freiwald Brief at 18.  In *Warshak*, the Sixth Circuit held that the government "may not compel a commercial ISP to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause."  *Id.* at *14.  The court reached this conclusion by analogizing the content of an email message to the contents of a letter, phone conversation, or a rented room.  *See id.* at * 11-*13.  *Warshak* expressly distinguished *United States v. Miller* on grounds that make clear that *Warshak* is not applicable to historical cell-site records.  First, it stated that *Miller* "involved simple business records, as opposed to the potentially unlimited variety of 'confidential communications' at issue here."  *Id.* at *13.  Cell-site records, of course, are business records rather than confidential communications.  Second, *Warshak* concluded that the provider was merely an "intermediary" with respect to the content of customer communications; it was not "the intended recipient of the emails."  *Id.*  In contrast, historical cell-site records are the phone company's own records, that it chooses to retain on its own accord, of the service it offers to its customers.  Because historical cell-site records are business records of the provider, the provider may be compelled to disclose them using a 2703(d) order.

Significantly, none of the Supreme Court cases cited by amici, including *Miller*, *Smith v. Maryland*, and *SEC v. Jerry T. O'Brien*, reject using compulsory process to obtain business records.  Amici strain to distinguish these cases, but the Supreme Court's compulsory process jurisprudence is grounded in basic legal principles fully applicable to the compelled disclosure of historical cell-site records:  the government's authority to compel disclosure of every person's evidence, the absence of a probable cause requirement for compulsory process, and the third-party rule that when a person communications information to a third party, his Fourth

Amendment rights are not violated when the third party conveys the information to the government. *See* United States Brief at 21-25. Thus, when a cell phone service provider has cell-site records that are relevant and material to a criminal investigation, the United States may use a 2703(d) order to compel their disclosure.

D.    The target of an investigation is not entitled to notice of a subpoena directed to a third-party.

EFF correctly recognizes that "a warrant requires probable cause and a subpoena does not because a search and a seizure conducted pursuant to a warrant is immediate and provides no opportunity for judicial review in advance, while a subpoena can be contested in court prior to enforcement." EFF Brief at 18. This principle explains why a 2703(d) order may be used to compel disclosure of historical cell-site records: the statute explicitly gives the service provider the ability to move to quash a 2703(d) order. *See* 18 U.S.C. § 2703(d).

EFF is mistaken, however, in asserting that a party who is not the recipient of a subpoena or 2703(d) order must have notice and the opportunity to move to quash. *See* EFF Brief at 18. EFF's argument is foreclosed by the Supreme Court's decisions in *Donaldson v. United States*, 400 U.S. 517, 522-23 (1971), and *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984).

First, *Donaldson* establishes that the target of an investigation will lack standing under the Fourth Amendment to intervene regarding a subpoena directed to a third party. In *Donaldson*, the Supreme Court had held that a taxpayer had no right to intervene in the enforcement of IRS summonses to his former employer for his employment records. The Court held that there was "no constitutional issue" with compelling the disclosure of the employment records and explained that "that question appears to have been settled long ago when the Court

17

upheld, against Fourth Amendment challenge, an internal revenue summons issued under the

Revenue Act of 1921 and directed to a third-party bank." *Donaldson*, 400 U.S. at 522.

Significantly, the Court did not engage in the expectation-of-privacy analysis urged by amici.

The Court "emphasize[d] . . . that what is sought here by the Internal Revenue Service from [the

employer] is the production of [the employer's] records and not the records of the taxpayer." *Id.*

at 522-23.  The Court further stated that the summonses were "directed to a third person with

respect to whom no established legal privilege, such as that of attorney and client, exists, and had

to do with records in which the taxpayer had no proprietary interest of any kind, which are owned

by the third person, which are in his hands, and which relate to the third person's business

transactions with the taxpayer." *Id.* at 523.  All of these characteristics also apply to a 2703(d)

order for historical cell-site records, so the target of an investigation would lack standing to

challenge a 2703(d) order for historical cell-site records.

Second, the Supreme Court squarely rejected amici's argument that the target of an

investigation must receive notice of a third-party subpoena in *SEC v. Jerry T. O'Brien, Inc.*, 467

U.S. 735, 743 (1984), where it held that the target of an SEC investigation had no right to notice

of a subpoena issued to a third party.  The Court stated that "when a person communicates

information to a third party even on the understanding that the communication is confidential, he

cannot object if the third party conveys that information or records thereof to law enforcement

authorities." *Id.*  The Court cited *United States v. Miller* and *Donaldson v. United States*.  It then

held that "[t]hese rulings disable respondents from arguing that notice of subpoenas issued to

third parties is necessary to allow a target to prevent an unconstitutional search or seizure of his

papers." *Id.*  Under *Donaldson* and *Jerry T. O'Brien*, the target of an investigation has no

standing to intervene and is not entitled to prior notice of a 2703(d) order for historical cell-site records.

      E.    <u>Even under the standards applicable to surreptitiously installed tracking devices, the Fourth Amendment does not bar compelled disclosure of historical cell-site records.</u>

Compelled disclosure of historical records should be judged under the standards applicable to third-party business records, not the standard applicable to surreptitiously installed tracking devices. Indeed, if the tracking device standard of *United States v. Karo*, 468 U.S. 705 (1984), were applied to phone usage, a pen register on a home telephone would require a search warrant – an outcome directly contradicted by *Smith v. Maryland*. But even measured against the constitutional standards applicable to tracking devices, the United States would not violate the Fourth Amendment when it obtains historical cell-site information without a warrant. *See* United States Brief at 25-30.

*Karo* held that the government's use of a tracking device violates the Fourth Amendment if it reveals facts about the interior of a constitutionally-protected space that would not have been publicly observable. *See Karo*, 468 U.S. at 715. But importantly, the Supreme Court held in *Karo* that no Fourth Amendment violation occurs if the government's monitoring of a tracking device reveals only the general location of the tracking device, even though the tracking device was within a particular private space at the time it was monitored. The government did not violate the Fourth Amendment in *Karo* when it used a tracking device to determine that the device was within a storage facility, but then used other means to discover the particular unit in the storage facility that held the tracking device. *See id.* at 720; United States Brief at 26-27.

Amici significantly overstate the holding of *Karo*. Freiwald asserts that a warrant is

19

required under *Karo* to obtain the location of a cell phone because a cell phone is "withdrawn from the public view." Freiwald Brief at 11-12. But the tracking device in *Karo* was also withdrawn from public view, and the United States did not violate the Fourth Amendment when it obtained general location information using it. EFF argues that information is protected under *Karo* if it can be used to draw inferences regarding a target's location. *See* EFF Brief at 12. But *Karo* applies to the information obtained from the tracking device itself, not other inferences drawn from that information. In *Karo*, law enforcement learned from monitoring the tracking device that it was within a particular storage facility. From this fact and the smell coming from a particular locker, law enforcement inferred the location of the tracking device, but this inferential reasoning did not violate the Fourth Amendment. Moreover, if law enforcement were forced to obtain a warrant for anything from which location-based inferences could be drawn, a warrant would be required for nearly all business records, including telephone records, credit card records, employment records, and records of customer purchases.

F.   This Court should reject amici's alternative interpretation of § 2703(d), under which a court may reject an application that meets the "specific and articulable facts" standard.

Section 2703(d) specifies that a 2703(d) order "may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought . . . are relevant and material to an ongoing criminal investigation." EFF argues that this language "places no restrictions on the discretion it grants to magistrates," EFF Brief at 4, such that a court has "discretion to deny applications for 2703(d) orders even when the government has made the factual showing required under that section." EFF Brief at 2. EFF's

argument relies on a recent Third Circuit case interpreting the "only if" language of § 2703(d) to mean that the "specific and articulable facts" requirement is a necessary condition for obtaining a 2703(d) order, but not a sufficient one.  *See In re Application of United States*, 620 F.3d 304, 319 (3d Cir. 2010) (stating that § 2703(d) "gives the MJ the option to require a warrant showing probable cause" and that such a requirement was "an option to be used sparingly").

Magistrate Judge Smith did not adopt this interpretation of § 2703(d), which is contrary to the statutory language, structure, and legislative history.  EFF's alternative interpretation of § 2703(d) should be rejected because it renders the phrase "and shall issue" in § 2703(d) superfluous.  EFF's "necessary but not sufficient" interpretation of § 2703(d) is equivalent to the following formulation, which omits the critical "and shall issue" language of § 2703(d):  a 2703(d) order "may be issued by any court that is a court of competent jurisdiction only if the governmental entity offers specific and articulable facts . . . ."  This interpretation therefore violates the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 21 (2001) (internal quotation marks omitted)).  Furthermore, the word "shall" has critical importance in a statute:  as the Supreme Court has stated, "[t]he word 'shall' is ordinarily 'the language of command.'" *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001).  Because EFF's interpretation of § 2703(d) improperly renders "shall" superfluous, it should be rejected.

Moreover, as Judge Tashima stated in his concurrence in the *Third Circuit Opinion*, the EFF's construction of § 2703(d) "provides *no* standards for the approval or disapproval of an

application" for a 2703(d) order.  *Third Circuit Opinion*, 620 F.3d at 320 (Tashima, J.,

concurring).  Its interpretation would permit a magistrate judge to arbitrarily deny an application

under 2703(d) without any reasoned basis.  As Judge Tashima stated, this interpretation "is

contrary to the spirit of the statute."  *Id.*  EFF attempts to defend its interpretation by stating "of

course [a court's] discretion is not boundless," EFF Brief at 4, but that defense finds no support

in the language of 2703 as interpreted by EFF.  Under EFF's interpretation of the language of §

2703(d), a court could reject a 2703(d) order even if the government established probable cause

for the order.

The United States believes that § 2703(d) requires a court to issue a 2703(d) order for

information that falls within the scope of the statute when its application satisfies the "specific

and articulable facts" standard of § 2703(d).  The function of the word "only" in 2703(d) is to

preclude the issuance of a 2703(d) order at the discretion of the issuing court if the government

fails to offer specific and articulable facts.  Without the word "only," § 2703(d) would specify

that a 2703(d) order "may be issued by any court that is a court of competent jurisdiction and

shall issue if" the government offered specific and articulable facts.  Thus, omission of the word

"only" would leave a court with discretion to issue a 2703(d) order in the absence of specific and

articulable facts.  Inclusion of "only" in § 2703(d) eliminates this discretion, but it does not

eliminate a court's obligation to issue a 2703(d) order when the government satisfies the

"specific and articulable facts" standard.

In addition, EFF's interpretation of 2703 finds no support in the legislative history.

Congress raised the standard for a 2703(d) order to the current "specific and articulable facts"

standard in 1994.  *See* Communications Assistance for Law Enforcement Act § 207, Pub. L. No.

103-414, 108 Stat. 4279 (1994) ("CALEA").  One would expect that if Congress intended to give courts discretion to set their own evidentiary thesholds for 2703(d) orders – an approach not followed in any other investigative context – it would have noted this unusual authority.  It did not do so.  Regarding the raised standard for a 2703(d) order, the House and Senate reports for CALEA both state:

> This section imposes an intermediate standard to protect on-line transactional records. It is a standard higher than a subpoena, but not a probable cause warrant. The intent of raising the standard for access to transactional data is to guard against "fishing expeditions" by law enforcement. Under the intermediate standard, the court must find, based on law enforcement's showing of facts, that there are specific and articulable grounds to believe that the records are relevant and material to an ongoing criminal investigation.

H. Rep. No. 103-827(I), at 31-32 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3489, 3511; S. Rep. No. 103-402, at 31 (1996).  This legislative history demonstrates that Congress set a "specific and articulable facts" standard for 2703(d) orders, and it did not provide standardless discretion to courts to reject applications that met this threshold.

Finally, EFF's argument that its interpretation of § 2703(d) is required by the doctrine of constitutional avoidance is mistaken.  In *In re Application of the United States*, 632 F. Supp. 2d 202, 209 (E.D.N.Y. 2008) ("Garaufis Opinion"), the district court rejected EFF's constitutional avoidance argument in the context of an order for prospective cell-site information.  The court explained that "applications under the Pen Register Statute and the SCA, which directly implicate Fourth Amendment concerns, are uniquely suited to case-by-case decision."  *Id.*  Under this reasoning, if a particular application of the United States for a 2703(d) order did violate the Constitution, it would be appropriate for a court to deny it.  Indeed, any means used by the United States to compel disclosure of information may be unconstitutional in certain

23

circumstances.  For example, grand jury subpoenas are generally permissible, but a bad-faith grand jury subpoena may violate the Constitution.  *See Branzburg v. Hayes*, 408 U.S. 665, 707 (1972).  Thus, as constitutional challenges to § 2703(d) can be decided on a case-by-base basis, there is no reason for a court to interpret § 2703(d) to provide standardless discretion for courts to deny 2703(d) orders.  This approach is consistent with the Supreme Court's general case-by-case approach to Fourth Amendment claims.  *See, e.g.*, *Sibron v. New York*, 392 U.S. 40, 59 (1968) (rejecting facial Fourth Amendment challenge to statute and stating "[t]he constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case.").  Moreover, as the Garaufis Opinion states, "in a field like search and seizure law, where lawmakers are continually struggling to update legislation to cope with changing technology, the presumption, inherent in the doctrine of constitutional avoidance, that Congress did not intend to promulgate legislation which 'raises serious constitutional doubts,' *see Clark*, 543 U.S. at 381, 125 S. Ct. 716, has little applicability." *Garaufis Opinion*, 632 F. Supp. 2d at 210.  EFF's interpretation of § 2703(d), which would allow a court to reject applications for 2703(d) orders that satisfy the statutory standard and do not violate the Fourth Amendment, should be rejected.

**Conclusion and Relief Sought**

This Court should reverse Magistrate Judge Smith's Opinion and grant the United

States's applications for historical cell-site information.

Respectfully submitted,

JOSE ANGEL MORENO
UNITED STATES ATTORNEY

By:     *Eric D. Smith* /s/_____
        Eric D. Smith
        Assistant United States Attorney

        Nathan Judish
        Senior Counsel, Computer Crime and
        Intellectual Property Section
        U.S. Department of Justice

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2011, the attached Government's Reply to Amicus Briefs of EFF, ACLU, ACLU of Texas, and Susan Freiwald was filed electronically through the CM/ECF system.  Service has been automatically accomplished through the Notice of Electronic Filing.

By:  *Eric D. Smith* /s/
Eric D. Smith
Assistant United States Attorney